IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SUSAN P. HOLLENBECK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19CV00676 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| EMMANUEL TRIKILIS and | ) | By: Hon. Glen E. Conrad |
| ELITE CONTRACTORS, INC., | ) | Senior United States District Judge |
| | ) | |
| Defendants. | ) | |

Plaintiff Susan P. Hollenbeck filed this personal injury action against Defendants Emmanuel Trikilis and Elite Contractors, Inc. The action arises from a motor vehicle accident that occurred on November 17, 2017. Defendants have admitted liability for the accident, and a trial on damages is currently scheduled to begin on May 19, 2021. The case is presently before the court on Defendants' motion to exclude expert testimony related to Plaintiff's alleged loss of earning capacity. The court held a hearing on the motion on October 21, 2020. For the following reasons, the motion will be denied.

## Background

Defendants' motion asks the court to exclude certain opinions offered by Robert Jackson and Dr. Timothy Carpenter. Mr. Jackson is a certified rehabilitation counselor who specializes in vocational rehabilitation. Dr. Carpenter is a forensic economist.

Mr. Jackson was asked to formulate opinions on the vocational implications of the injuries Plaintiff sustained in the accident, including any loss of earning capacity. In a report dated June 25, 2020, Mr. Jackson opined that Plaintiff sustained a "total loss of earning capacity" due to the injuries she sustained in the accident and the resulting work-related limitations

imposed by a physician. See Jackson Report 6, ECF No. 68-1 ("The limitations noted by Dr. Carmouche are less than a full range of the sedentary exertional level and rule out all work."). Mr. Jackson then assessed Plaintiff's "pre-injury earning capacity for full-time employment" based on her work history as a substitute teacher, teacher's assistant, childcare worker, and cashier, and the most recent wage statistics for each job. Id. at 6–7. Mr. Jackson noted that the "mean annual wages for jobs Mrs. Hollenbeck has held in the past in the northwest Virginia non-metropolitan area are as follows":

| | |
|---|---|
| Substitute Teacher | $24,340 |
| Teacher Assistant | $24,420 |
| Childcare Worker | $22,190 |
| Cashier | $23,310 |

Id. at 6. Accordingly, Mr. Jackson determined that Plaintiff's "pre-injury earning capacity for full-time employment in her area was approximately $22,190 - $24,420 annually." Id. at 7.

At the time of Mr. Jackson's report, Plaintiff was 61 years old. She had most recently worked approximately three days per week for the Alleghany County Public School Division, after staying home for nearly ten years to care for her deceased son's child. Prior to that, she worked approximately 35 hours per week as a cashier for Walmart. When interviewed by Mr. Jackson, Plaintiff "indicated she had planned on retiring at age 70." Id.

Dr. Carpenter utilized the report prepared by Mr. Jackson to calculate the "estimated economic losses due to lost earning capacity." Carpenter Report 1, ECF No. 68-2. Dr. Carpenter determined that the total amount of Plaintiff's estimated lost earning capacity is $229,394, which, when discounted to present value, is equivalent to $206,633.

Defendants have moved to exclude the financial projections provided by Mr. Jackson and Dr. Carpenter. Defendants argue that the experts' opinions related to Plaintiff's alleged loss of

earning capacity for full-time employment are based on unfounded assumptions rather than her actual work history.

### Discussion

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Under Rule 702, expert testimony "is admissible if it 'rests on a reliable foundation and is relevant.'" Equal Emp. Opportunity Comm'n v. Freeman, 778 F.3d 463, 466 (4th Cir. 2015) (quoting Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999)). In determining reliability, the court acts as a gatekeeper. Id. "The scope of the court's gatekeeping inquiry will depend upon the particular expert testimony and the facts of the case." Id. (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999)).

In this case, Defendants are effectively challenging one of Plaintiff's substantive claims for damages. Thus, Defendants' motion also implicates Virginia law. See Boyd v. Bulala, 877 F.2d 1191, 1199 (4th Cir. 1989), certified question answered, 389 S.E.2d 670, 677–678 (Va. 1990); see also Musick v. Dorel Juvenile Grp., Inc., 818 F. Supp. 2d 960, 963 (W.D. Va. 2011) ("The parties agree that Virginia law applies to the admissibility of these experts' opinions [as to lost earning capacity].").

Under Virginia law, the plaintiff bears the burden of proving the elements of damages with "reasonable certainty." Gwaltney v. Reed, 84 S.E.2d 501, 502 (Va. 1954). "Although 'mathematical precision' is not required, the plaintiff must 'furnish evidence of sufficient facts or circumstances to permit at least an intelligent and probable estimate' of damages." Bulala v. Boyd, 389 S.E.2d at 677. In order to form a reliable basis for the calculation of lost earning capacity, the evidence "must be grounded upon facts specific to the individual whose loss is being calculated." Id. In other words, the evidence "must relate to facts and circumstances

personal to the plaintiff as an individual, not merely to [her] membership in a statistical class." Id. at 678.  Applying these standards, the court concludes that Defendants' motion must be denied.

Defendants primarily rely on two decisions by the Supreme Court of Virginia as support for their argument that the opinions of Mr. Jackson and Dr. Carpenter are not sufficiently founded on Plaintiffs' work history. First, Defendants point to Greater Richmond Transit Co. v. Wilkerson, in which the Supreme Court held that a vocational rehabilitation counselor's projections should not have been admitted into evidence because they were not grounded on all of the data relevant to the plaintiff's projected loss of earning capacity. 406 S.E.2d 28, 33 (Va. 1991). Among other deficiencies, the vocational rehabilitation counselor assumed that the plaintiff would have worked 40 hours a week for the balance of her working life, even though there was no evidence that she normally worked that many hours prior to her injury. Id. Similarly, in Vasquez v. Mabini, the Supreme Court held that expert testimony regarding the decedent's expected loss of income was erroneously admitted because it was based on an unfounded assumption of full-time employment. 606 S.E.2d 809, 812 (Va. 2005). Although there was no evidence that the decedent "had ever held full-time employment," the expert assumed that the decedent would have engaged in full-time work following the underlying accident. Id. (emphasis added).

The court agrees with Plaintiff that the vocational evidence in this case is distinguishable from that in the foregoing caselaw. Although Plaintiff only worked approximately three days per week following the accident, her pre-accident work history includes full-time employment as a

4

Walmart cashier.[*] Moreover, the record indicates that Plaintiff stopped working for Walmart in order to care for her deceased son's young child and that she was seeking to return to the workforce at the time of the accident. Based on the current record, the court is unable to conclude that the experts' opinions as to Plaintiff's loss of earning capacity are based on an unfounded assumption of full-time employment or otherwise inadmissible under Vasquez and Wilkerson.

The court is likewise unable to conclude that Plaintiff's experts relied "entirely upon statistics and assumptions" in evaluating her loss of earning capacity. Bulala, 389 S.E.2d at 677. Instead, their reports "combine facts personal to the plaintiff with national data that corresponds to the individualized evidence." Musick, 818 F. Supp. 2d at 963 (distinguishing Bulala). Mr. Jackson's report indicates that he personally interviewed Plaintiff and considered her medical history, education, skills, and work history. He used this individualized data to determine whether Plaintiff is unemployable as a result of the accident and to calculate her pre-injury earning capacity for full-time employment. Dr. Carpenter then utilized the report generated by Mr. Jackson to assess the present value of Plaintiff's alleged loss of earning capacity. Because Mr. Jackson and Dr. Carpenter "base[d] their conclusions on information personal to the plaintiff," the court is satisfied that their proposed testimony "complies with the Supreme Court of Virginia's call for a more individualized analysis of lost earning capacity." Id. at 964.

In short, the court believes that the points made by Defendants go to the weight of the experts' opinions rather than their admissibility. Defendants will be free to cross-examine Mr.

---

[*] It is unclear whether any of Plaintiff's other pre-accident jobs were performed on a full-time basis. During the hearing, however, Defendants acknowledged that Plaintiff may have worked full-time for Walmart. See, e.g., Isaac v. Wal-Mart Stores East, LP, No. 1:16-cv-00179, 2017 U.S. Dist. LEXIS 201305, at *5 n.4 (S.D. Ala. Dec. 7, 2017) (noting that "Walmart considers 'full-time' hours to be weekly scheduling of 34 to 40 hours"). Mr. Jackson's report also indicates that Plaintiff maintained a second job while working as a teacher's assistant in Page County.

Jackson and Dr. Carpenter regarding Plaintiffs' actual employment history and the role that it played in forming their respective opinions. Defendants will also be able to elicit testimony from Plaintiff regarding her previous jobs and compensation. See Egan v. Butler, 772 S.E.2d 765, 770 (Va. 2015) (explaining that "a plaintiff's work history and quality of past job performance is admissible evidence probative of the plaintiff's claimed damages in the form of future lost income or future lost earning capacity"); Hodges v. Norfolk S. Ry. Co., 56 Va. Cir. 348, 349 (Va. Cir. Ct. 2001) (noting that "the wages a person earned prior to an injury" are ordinarily "an indicator of the person's income and earning capacity in the future"). Ultimately, the jury will have to decide, based on all of the evidence, whether the plaintiff's alleged loss of earning capacity has been proven to a reasonable certainty.

## Conclusion

For the reasons stated, Defendants' motion to exclude expert testimony related to Plaintiff's loss of earning capacity will be denied. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This __12th__ day of November, 2020.

_____
Senior United States District Judge

6