IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SUSAN P. HOLLENBECK, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:19cv00676 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| EMMANUEL TRIKILIS, *et al* ) | |
| ) | By: Hon. Thomas T. Cullen |
| Defendants. ) | United States District Judge |
| ) | |

Following a motor-vehicle accident, Plaintiff Susan P. Hollenbeck filed this personal injury suit against Defendants Emmanuel Trikilis and Elite Contractors, Inc. Defendants conceded liability for the accident, and the parties are set to try the issue of damages to a jury. In advance of that trial, Plaintiff and Defendants filed motions in limine seeking to restrict the testimony of the opposing side's medical expert. Specifically, Defendants have moved to limit the opinions of Plaintiff's expert, Dr. Jonathan Carmouche, an orthopedic spine surgeon, about Plaintiff's need for future spine surgery and her nerve injuries. (*See* ECF No. 79.) Plaintiffs, in turn, have moved to preclude Dr. James Leipzig, Defendants' spine expert, from testifying about Plaintiff's various mental health and medical conditions. (*See* ECF No. 80.) For the reasons explained below, the court will deny Defendants' motion in limine, and deny in large part, and grant in part, Plaintiff's motion in limine.

## DISCUSSION

**I.     Defendants' Motion in Limine – Dr. Carmouche**

Plaintiff timely noticed Dr. Carmouche as an expert expected to testify about the back injuries that Plaintiff suffered as a result of the accident.  (*See* ECF No. 79, Ex. A.)  Defendants now seek to exclude Dr. Carmouche's opinions, as detailed in his expert report, that Plaintiff will need spinal-fusion surgery within the next five years and that she sustained permanent nerve damage as the result of the accident.  The court will address each issue in turn.

**A. Future Spinal-Fusion Surgery**

In his expert report, Dr. Carmouche, a medical doctor and head of the Department of Orthopedic Surgery and spinal surgery sections at Carilion Clinic, opined that the accident at issue caused injuries to Plaintiff, "including an increase in the size of her disk herniation at the L2/3 disc and worsening of the compression of her nerve root, and exacerbated her pre-existing lumbar spine issues."  (ECF No. 79-1 at 16.)  He further noted that the two spinal surgeries Plaintiff underwent following the accident would not have been necessary but for that accident.  Dr. Carmouche added that the injuries she sustained in the accident and the resulting surgeries "will cause her arthritic/degenerative changes to advance at an accelerated rate at the L2/3 level and adjacent levels."  (*Id.*)  Relatedly, Dr. Carmouche concluded that given this deteriorating condition and her "ongoing symptoms," Plaintiff will need another spinal fusion surgery at the L1 to L3 levels, likely within the next five years.  (*Id.*)  Dr. Carmouche noted that these opinions "are stated with a reasonable degree of medical probability/certainty." (*Id.*)

But Dr. Carmouche's surgical recommendation comes with a catch. Before Plaintiff can undergo further spine surgery, she will have to lose a substantial amount of weight. Specifically, Dr. Carmouche notes that Plaintiff, who weighs approximately 335 pounds, will need to lose 70 pounds and attain a body mass index (BMI) of 40 to undergo fusion surgery. Accordingly, Defendants argue that Dr. Carmouche's opinion regarding the need for future spinal surgery is impermissibly "speculative [and] contingent upon some future, unknown variable." (ECF No. 79 at 2.) Defendants also argue that Dr. Carmouche's report does not adequately explain why additional fusion surgery would be medically necessary, pointing out that Plaintiff's treating spine surgeon, Dr. Harron, did not share this opinion. (*See* Harron Dep. 72:12–72:16, ECF No. 79-2.)

Under well-established Virginia law governing this diversity action, a plaintiff may recover for future medical expenses are (1) causally related to a defendant's negligence; and (2) reasonable and medically necessary. *Rice v. Williams*, No. 7:16-cv-00396, 2017 U.S. Dist. LEXIS 117504, at *1 (W.D. Va. July 26, 2017) (citing *McMunn v. Tatum*, 379 S.E.2d 908, 913 (Va. 1989)); *see also* Virginia Model Jury Instructions—Civil, No. 9.000 (2021) (providing that a plaintiff can recover for past medical expenses "and any that may reasonably be expected to occur in the future"). But all damages, including those related to future effects of an injury and attendant expenses, must be supported by sufficient evidence. *See Hailes v. Gonzales*, 151 S.E.2d 388, 390 (Va. 1966). "Proof with mathematical precision is not required, but there must be at least sufficient evidence to permit an intelligent and probable estimate of the amount of damage." *Id.* Testimony regarding future medical expenses, including future surgeries, is only admissible if "brought out of the realm of speculation and into the realm of

reasonable probability; the law in this area deals in 'probabilities' and not 'possibilities.'" *Rice*, 2017 U.S. Dist. LEXIS 117504, at *3–4 (quoting *State Farm Mut. Auto Ins. Co. v. Kendrick*, 491 S.E.2d 286, 287 (Va. 1997)).

The court first concludes that Dr. Carmouche adequately explained why, in his opinion, fusion surgery would be necessary in the future within a reasonable degree of medical probability. Specifically, he noted that the injuries Plaintiff sustained in the collision and the resulting surgeries will hasten (and worsen) arthritic and degenerative conditions in her back, requiring future pain management and future surgery. (*See* ECF No. 79-1 at 16–17.) Dr. Carmouche, based on his background, training, and experience as a spine surgeon, is abundantly qualified to render that opinion, and his conclusions are sufficiently grounded in sufficient facts and data and are the product of reliable principles and methods, including his review of Plaintiff's extensive medical records and diagnostic images, as well as his physical examination of Plaintiff last summer. *See* Fed. R. Evid. 702.

The court also concludes that Plaintiff's need for future spinal surgery is reasonably probable. Defendants mistake the relevant inquiry when they argue that Plaintiff's damages with respect to the future surgery are speculative because they are contingent on Plaintiff's future weight loss. When determining whether damages for future medical procedures are reasonably likely, the court's inquiry examines whether Plaintiff will require the procedure, not the logistics of receiving treatment. *See Garris v. 933387 Ont., LTD.*, No. 5:17-cv-39, 2018 U.S. Dist. LEXIS 203606, *5–6 (W.D. Va. Nov. 30, 2018); *Rice*, 2017 U.S. Dist. LEXIS 117504, at *7. In *Rice* and *Garris*, the court excluded evidence as speculative because the plaintiffs' treating physicians were equivocal on whether the plaintiffs needed the procedures for which they

sought to recover. Dr. Carmouche's report expresses no doubt as to whether Plaintiff will require spinal fusion surgery. He believes that Plaintiff will need surgery regardless of whether she is able to become a viable candidate for it. (*See* ECF No. 79-1 at 16.) In other words, Plaintiff's need for future medical treatment is not in question, only the logistics of how she will obtain that treatment. Her need to consult with a physiologist, nutritionist, and/or a bariatric surgeon doesn't reduce the likelihood that her injuries will require surgery. If Plaintiff suffered from another medical condition that required prior treatment before she was a candidate for surgery—for example if her diabetes were uncontrolled—the necessity of treating that condition would be no bar to recovery for the surgery.[1] Her obesity is no different. Health complications that render a plaintiff's injury more difficult to treat are not a windfall for the defendant. The court will therefore deny Defendants' motion to exclude Dr. Carmouche's opinions about future surgery.

### B. Permanent Nerve Damage

Defendants also take issue with Dr. Carmouche's anticipated testimony, based on his report, that Plaintiff suffered permanent nerve damage from the car accident and the resulting surgeries. Defendants argue that Dr. Carmouche's opinion regarding Plaintiff's permanent nerve damage does not meet the relevancy and reliability requirements for expert testimony because he did not base it on confirmatory neurological testing.

---

[1] This analysis would be different if Defendants presented the court with evidence that Plaintiff was unlikely to receive surgery because of intervening contingencies or variables. Here, they argue only that the existence of an intermediate step—the required weight loss—renders Plaintiff's damages speculative. There are contingencies in every claim for future medical care; their existence alone is insufficient to exclude evidence of damages.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Collectively, these require the trial court to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589. "The question of whether a witness is qualified to testify is context-driven and can only be determined by the nature of the opinion he offers." *RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals*, Inc. 609 F. App'x 731, 738 (4th Cir. 2015) (internal quotation marks and citation omitted). Ultimately, the court's objective should be to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. And although the court must act as the gatekeeper for expert opinions, it should be mindful "that the traditional and appropriate means of challenging expert testimony are vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Kovari v. Brevard Extraditions*, LLC, 461 F. Supp. 3d 353, 369 (W.D. Va. 2020) (internal quotation marks and citations omitted).

In his report, Dr. Carmouche acknowledged that EMG or NCV testing "could possibly confirm [Plaintiff's] permanent damage." (ECF No. 79-1 at 17.) He nevertheless concluded based on Plaintiff's "clinical presentation" that she suffered from permanent nerve damage, and therefore that EMG or NCV testing was not necessary. (*Id.*) Defendants make the conclusory argument that this is insufficient under Rule 702, suggesting that Dr. Harron, Plaintiff's treating spine surgeon, indicated that such testing is required to reach that

-6-

conclusion. But this misreads Dr. Harron's testimony. Although Dr. Harron noted that EMG or NCV testing could help differentiate between nerve damage associated with Plaintiff's diabetes (diabetic neuropathy) and damage to the nerve root associated with the accident or trauma (chronic radiculopathy), he largely agreed with Dr. Carmouche that Plaintiff's clinical presentation following surgery indicated that she likely suffered permanent nerve injuries related to the accident. (*See* Harron Dep. 74:18–76:14.)

Dr. Carmouche based his opinions about Plaintiff's nerve damage on his review of her medical records, diagnostic imaging, and physical examination. This is standard methodology for a practicing physician and sufficiently reliable under Rule 702. There is simply no requirement that an expert with Dr. Carmouche's background, training, and experience perform certain testing for his opinions regarding a person's medical conditions to be admissible. *See Tunnell v. Ford Motor Co.*, 330 F. Supp. 2d 707, 725 (W.D. Va. 2004) (noting that *Daubert* does not require an expert to perform testing before his opinion is admissible under Rule 702). To the extent Defendants take issue with Dr. Carmouche's findings, they are free to cross examine him on perceived shortcomings, including the absence of a nerve conduction study. *See Kovari*, 461 F. Supp. 3d at 371 ("Dr. Vassallo's credentials clear the bar set by Rule 702, and if Brevard finds gaps in her experience or knowledge that may discredit her testimony, they are free to cross-examine her on alleged deficiencies at trial."); *Kingsley v. Brenda & Gene Lummus, Inc.*, No. 1:11cv32, 2012 U.S. Dist. LEXIS 29015, *22 (W.D.N.C. Mar. 6, 2012) ("While Dr. Barrett's lack of testing may be relevant to the weight attributed to his opinions, it does not render his opinions inadmissible *per se* under *Daubert*."). The court will therefore deny Defendants' motion regarding Dr. Carmouche's nerve-damage opinions.

## II. Plaintiff's Motion in Limine – Dr. Leipzig

Defendants timely noticed Dr. James Leipzig as an expert expected to testify that Plaintiff's current back problems are the result of advanced disk degeneration and spinal stenosis, rather than the accident and resulting surgery. Plaintiff timely filed[2] a motion in limine to prevent Dr. Leipzig from discussing other medical conditions, including her history of depression (and previous suicide attempt), diabetes, asthma, acid reflux, and neck pain. Plaintiff argues that Dr. Leipzig's testimony about these "unrelated" medical conditions would be irrelevant and unduly prejudicial. (ECF No. 81 at 2). She also contends that it would constitute inadmissible hearsay. Finally, Plaintiff argues that this evidence should be excluded under Federal Rule of Civil Procedure 37.

In his initial and supplemental expert reports, Dr. Leipzig explained that Plaintiff's history of chronic obesity led him to the conclusion that her increased disk herniation was not caused by the accident at issue, but was the result of "natural progression of her [stenosis and arthritis] at the L2-L3 level." (ECF No. 81-1 at 5–6.) Dr. Leipzig also explained that her history of obesity made her a "poor surgical candidate," and therefore that he disagreed with Dr. Carmouche that she was likely to undergo spinal-fusion surgery in the future. At his deposition, Dr. Leipzig added that Plaintiff's history of depression further reduced the likelihood that Plaintiff would undergo future spinal surgery, noting that "depressed patients or depressed individuals tend not to do well with spinal fusions." (Leipzig Dep. at 75:12–

---

[2] Defendants argue that Plaintiff's motion in limine was untimely in that it was not filed 40 days before trial, but the court concludes that it was timely under the pretrial scheduling order and the Federal Rules of Civil Procedure.

76:10.) And Dr. Leipzig indicated that a few of Plaintiff's chronic medical conditions, including her obesity, depression, and diabetes were, in his mind, only relevant to the issue of planning for future surgery:

> Q: Then Paragraph 4 you talk about the things—her comorbidities, and you talk about her psychiatric problems, asthma, diabetes, arthritis, reflex—
>
> A: Yeah. That's a typo. It should be reflux.
>
> Q: Yeah, I thought it was. And depression. The things I just read, those things, they don't matter for your opinion, right?
>
> A: They don't matter for my opinion. They matter for surgical planning and such, but they don't matter for my opinion.

(Leipzig Dep. 73:2–73:11, ECF No. 81-1.) As detailed above, Plaintiff's expert, Dr. Carmouche, will opine that the increased disc herniation was the result of the accident at issue, rather than natural progression of her stenosis and arthritis, and that this condition will require future spinal surgery. To the extent that Plaintiff's history of chronic obesity informs Dr. Leipzig's contrary opinion about the natural progression of her stenosis and arthritis, it is relevant to facts at issue. *See* Fed. R. Evid. 401 (evidence is relevant if it has any tendency to make a fact at issue more, or less, probable than it would be without that evidence). The same is true regarding her depression and how, in his mind, it makes future surgery less likely. Stated differently, since the cause of the disk herniation and the likelihood of future surgery are contested, Dr. Leipzig should be able to point to these medical concerns in explaining why he disagrees with Dr. Carmouche's opinions.[3]

---

[3] And to the extent that other conditions such as Plaintiff's diabetes, asthma, and COPD are relevant, in his mind, to planning for future surgery, he will be permitted to mention these conditions in explaining that opinion.

But Plaintiff makes a valid point regarding the danger of undue prejudice. Although Plaintiff's "history of depression" may be relevant to Dr. Leipzig's opinions, the court finds that any reference to her previous suicide attempt would undoubtedly create the risk of unfair prejudice, and that this risk substantially outweighs the probative value, if any, of mentioning this unfortunate incident.[4] *See* Fed. R. Evid. 403.

To the extent Plaintiff argues that Dr. Leipzig's opinion relies on inadmissible hearsay, the court is not persuaded. Plaintiff is correct that the discussion of her chronic health conditions in her medical records does not fall under the exception for statements made for medical diagnosis and treatment. *See* Fed. R. Evid. 803(4). That exception, contrary to Defendants' argument, only covers statements made by the person seeking medical treatment, not the observations and conclusions made by a physician during treatment and memorialized in the medical records. But under Federal Rule of Evidence 703, an expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." If the underlying facts or data are otherwise inadmissible (e.g., because they constitute hearsay), "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Applied to this case, this means that Dr. Leipzig can testify, for example, that Plaintiff is not a viable candidate for future spinal surgery and/or that he disagrees with Dr. Carmouche's opinion that she will undergo spinal fusion surgery in the

---

[4] The court also recognizes that a limiting instruction may be necessary to ensure no undue prejudice flows from the evidence regarding Plaintiff's depression. Put simply, this medical condition is only relevant for a narrow and limited purpose, and the court will instruct the jury not to draw improper inferences from it, or any other medical conditions. Plaintiff's counsel is invited to submit such an instruction with her proposed final jury instructions.

next five years. He may then explain that he bases that opinion, in part, on her chronic health conditions, including depression, diabetes, and obesity.[5] And, as is typical of an expert witness, he can do this in a general manner, without reciting, chapter and verse, the underlying facts or data (in this case, the medical records) themselves. In short, the evidentiary basis for Dr. Leipzig's opinion is critical; without it, the jury would have no means to evaluate his conclusions.

Finally, Plaintiff argues that Dr. Leipzig should be barred from mentioning Plaintiff's history of depression and diabetes, because he did not timely disclose these specific conditions as having any bearing on his opinion in his expert reports. Plaintiff moves to exclude any reference to Plaintiff's diabetes and depression under Federal Rule of Civil Procedure 37(c)(1), which prohibits the use any information that was not timely disclosed under Rule 26. Under Rule 37, the failure to disclose does not bar the presentation of the evidence if the failure to disclose was "substantially justified or is harmless." In determining whether Dr. Leipzig's failure to disclose Plaintiff's diabetes as being relevant to his opinion regarding her candidacy for future surgery was harmless, the court considers the four factors outlined in *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003). Those factors are (1) the surprise to the party against whom the evidence would be offered; (2) the ability of the party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; and (4) the importance of the evidence. *Id.* at 597.

The court finds that these factors weigh in favor of allowing Dr. Leipzig to mention Plaintiff's history of depression and diabetes to explain why, in his opinion, she is not a viable

---

[5] To a certain extent, Plaintiff's expert does the same.

candidate for future surgery. First, there is little surprise to Plaintiff that Dr. Leipzig considered these medical conditions in forming his opinions. He referenced her chronic medical issues in his initial and supplemental reports, and he explained at his deposition—taken approximately nine months ago—that those conditions informed his opinion regarding future surgery. Second, Plaintiff has her own expert who is prepared to address this exact issue. And Plaintiff will be free to cross examine Dr. Leipzig about the contents of his report and his opinion. Third, allowing Dr. Leipzig to cite Plaintiff's history of obesity, diabetes, and depression as reasons for his opinion will not disrupt the trial. Both parties are well prepared to discuss (and challenge) the significance of Plaintiff's underlying health conditions. Fourth, the existence of these conditions is important—to both parties. Although one can argue that this factor cuts in Plaintiff's favor because important undisclosed evidence is more likely to be prejudicial, the court finds that the risk of unfair prejudice is minimal given the lack of surprise, as noted above. On balance, the court finds that the importance of the evidence outweighs its exclusion. Because the *Southern States* factors weigh against exclusion of the pertinent health conditions, the court will deny Plaintiff's motion on this basis.[6]

In sum, the court will deny Plaintiff's motion in limine to the extent it seeks to preclude Dr. Leipzig from mentioning certain medical conditions that he noted inform his opinions regarding the cause of her disk herniation and the likelihood of future surgery. The court,

---

[6] The court notes that Plaintiff's other medical conditions, as outlined above, may be relevant for other purposes, including cross-examination of Dr. Carmouche concerning his opinion on the future need for spinal surgery and cross examination of Plaintiff regarding how the injuries she sustained in the accident have limited her physical functioning and have brought on unwanted lifestyle changes or "inconvenience caused in the past." *See* Virginia Model Jury Instructions—Civil, No. 9.000 (2021). But without hearing the potential questions or testimony, the court cannot rule on relevancy (or undue prejudice) and will accordingly defer consideration of this separate issue until trial.

however, will grant Plaintiff's motion in limine insofar as it seeks to prevent Dr. Leipzig from mentioning or discussing Plaintiff's previous suicide attempt. Dr. Leipzig shall not mention this episode during his trial testimony.[7]

## CONCLUSION

For the reasons stated above, the court will deny Defendants' motion in limine (ECF No. 79), and deny in part, and grant in part, Plaintiff's motion in limine (ECF No. 80). The court will enter a corresponding order.

**ENTERED** this 22nd day of June 2021.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[7] And the parties should redact any references to a prior suicide attempt from any medical records that they intend to offer into evidence by stipulation or otherwise.